UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| United States of America, | Case No. 23-cr-108 (PJS/JFD) |
| Plaintiff, | |
| v. | **ORDER DENYING DEFENDANT'S MOTIONS TO REOPEN PRETRIAL MOTIONS [103] AND FOR A *FRANKS* HEARING [104]** |
| Kevin Deandre Bennett, | |
| Defendant. | |

---

This case is before the undersigned United States Magistrate Judge on Defendant Kevin Deandre Bennett's Motion to Reopen Pretrial Motions (Dkt. No. 103) and for a *Franks* Hearing (Dkt. No. 104). The United States opposes both motions. (Dkt. No. 110.) With leave of Court, Mr. Bennett submitted a reply to the opposition of the United States. (Dkt. No. 115.) As a supplement to the opposition of the United States, the Court also has before it the search warrant application of Officer William Martin of the Minneapolis Police Department. The United States has also provided the Court with a video file of surveillance footage from a pole camera in an alley behind the 3000 block of Humboldt Avenue South in Minneapolis. (*See* Dkt. No. 112.) These motions have been litigated and decided on an accelerated basis because this case is scheduled for trial on July 8, 2024, and the two motions were brought long after the bulk of pretrial motions had been litigated and ruled on.

A *Franks* hearing will be convened to examine whether statements in a search warrant application are true and complete only if the moving party makes "a substantial

initial showing" that the affiant made false statements in the application or omitted material information from the application "knowingly and intentionally or with reckless disregard for the truth." *See Franks v. Delaware*, 438 U.S. 154, 155–56 (1978). Only material false statements or omissions will trigger a *Franks* hearing. Materiality is tested by rewriting the application to correct the false statements or provide the missing information, as appropriate. If the rewritten application no longer shows probable cause, then the false statements or omissions were material.

Mr. Bennett alleges that Officer William Martin of the Minneapolis Police, made two false statements when he applied to a state court judge for a search warrant for Mr. Bennett's person on February 20, 2023 (Search Warrant Appl. at 9, Dkt. No. 110-1). First, Mr. Bennett claims it was false for Officer Martin to assert that he was able to recognize Mr. Bennett in the alley behind an apartment building at 3XXX Dupont Avenue South, Minneapolis, when, according to Mr. Bennett, one cannot recognize people's facial features on the surveillance footage. Second, Mr. Bennett alleges that Officer Martin falsely stated that the police conducted a trash pull when the surveillance footage shows no such thing.[1] Having reviewed Officer Martin's search warrant application and the

---

[1] This argument changed between Mr. Bennett's original motion filing on June 18, 2024 and his filing of a reply on June 27, 2024. Mr. Bennett originally claimed that Officer Martin made a false statement in his affidavit when he wrote that Mr. Bennett was seen depositing something into the trash and that from then until the police-conducted trash pull nobody else was seen putting anything into the trash. The pole camera video, according to Mr. Bennett's original argument, "does not include any footage of any person depositing trash into the relevant receptacle during the timeframe in question." Mr. Bennett provided the Court with a flash drive of some video surveillance footage, but it did not include February 2, 2024, the day before the trash pull. The video provided by the United States does include February 2 and on that date, a few minutes past 10:00 p.m., a person is clearly

surveillance footage, the Court finds that although faces <u>are</u> hard to see on the video, Officer Martin had ample other evidence to justify his conclusion that a person he saw on surveillance was Mr. Bennett. The Court further finds that, contrary to Mr. Bennett's claim, the surveillance footage shows a trash pull.

But even if one grants Mr. Bennett's points for the sake of argument, there is no evidence that Officer Martin deliberately lied or even acted in reckless disregard of the truth. Finally, the misstatements are not material. The trash pull yielded a plastic bag containing Mannitol, which Officer Martin explained in his affidavit is often used as a cutting agent by drug distributors. The trash was swabbed, and those swabs were then tested for the presence of narcotics by a laboratory. The test results were positive for cocaine, fentanyl, and THC. As to Mr. Bennett's presence in the alley, that is of some value in corroborating that he lives at the apartment to be searched. But excising these alleged false statements still leaves a search warrant application that sets forth strong evidence that Mr. Bennett is dealing drugs from the apartment to be searched.

For these reasons, the motion for a *Franks* hearing as to the February 20, 2023 search warrant for Mr. Bennett's person will be denied. Mr. Bennett indicates he brings his motion to reopen pretrial motions solely to allow the motion for a *Franks* hearing to be heard. Given that the motion for a *Franks* hearing has been fully litigated, the motion to reopen pretrial motions will be granted.

---

seen putting trash in the bin. The United States pointed this out in its response in opposition. (Gov't's Resp. to Def.'s Mot. Franks Hr'g. at 15–15, Dkt. No. 110.) Mr. Bennett now claims the video surveillance does not show the police conducting the trash pull, but he is wrong about this as well, as detailed below.

Mr. Bennett's motion for a *Franks* hearing, as noted above, concerns a search warrant for Mr. Bennett's person. However, Mr. Bennett also states that while he is unable to specify which additional search warrant applications might include the "offending portions," he estimates that "there are at least twelve." (Def.'s Mot. *Franks* Hearing, Dkt. No. 104.) No additional detail about which warrants are being challenged has been provided by Mr. Bennett since the filing of his motion ten days ago on June 18, 2024. A party moving to suppress evidence must precisely identify the evidence whose suppression is sought so that a court can understand what it is being asked to decide. *United States v. Jones*, No. 09-CR-260(1) (DWF/RLE), 2009 WL 4723341, at *3 (D. Minn. Dec. 2, 2009). A claim that "at least twelve" search warrants are constitutionally infirm, without more, is wholly insufficient to allow a litigant seeking suppression to meet their burden and the Court declines to hear Mr. Bennett's challenge to any search warrant other than the one he specifically identified. In addition, the *Franks* analysis is complete, and can end, with the Court's finding that neither of the two challenged statements—about identifying Mr. Bennett and about the trash pull—are false. The Court's materiality analysis will be needed only if a higher court disagrees with this Court's finding that there is no falsity. Therefore, this Order decides all *Franks* challenges to all warrants which were granted on the strength of applications describing Officer Martin's identification of a person in the alley as Mr. Bennett and/or including a description of a trash pull from a bin in that alley on February 2, 2023. This Order also decides that none of Officer Martin's statements about these two subjects were deliberate lies, nor were they made with reckless disregard for the truth. The Court's materiality analysis, however, only applies to the specifically-challenged warrant,

because the Court declines to undertake a materiality analysis of the 18 other search warrants in this case on the off-chance that one of them is among the "others" potentially challenged by Mr. Bennett.

I.  **Procedural Background**

On March 23, 2023, a United States grand jury returned a one-count indictment against Mr. Bennett charging him with being a Felon in Possession of a Firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). (Dkt. No. 12.) Some of the evidence against Mr. Bennett came from a search of his person that was authorized by a warrant issued by a state court judge on February 20, 2023. The affiant on the search warrant application was Officer William Martin of the Minneapolis Police Department. On July 20, 2023, the grand jury returned a superseding indictment charging Mr. Bennett with three additional counts: two counts of possession with intent to distribute fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 841(b)(1)(B), and one count of carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Dkt. No. 44.) The superseding indictment remains the operative indictment in this case.

Mr. Bennett filed motions (Dkt. Nos. 25-33) concerning the original indictment on June 28, 2023, as required by the Court's Third Amended Pretrial Scheduling and Litigation Management Order (Dkt. No. 23). Among Mr. Bennett's June 28 motions was a motion for a *Franks* hearing (Dkt. No. 33) which was accompanied by a memorandum of law. (Dkt. No. 36.) The Court held a hearing on Mr. Bennett's motions on September 11, 2023. During that hearing, 19 search warrant applications and tracking warrant applications

were marked as exhibits and introduced into evidence, among them, as Exhibit 15, the "Warrant to search Kevin Deandre Bennett's Person" dated February 20, 2023. (*See* Gov't Ex. List, Dkt. No. 60) that is at issue in the present motion for a *Franks* hearing.

Following the motions hearing, both Mr. Bennett and the United States filed post-hearing briefs that included argument of the *Franks* issue. (Dkt. Nos. 62, 64, 65.) The undersigned denied Mr. Bennett's first motion for a *Franks* hearing by order (Dkt. No. 68). Mr. Bennett objected to the order (Dkt. No. 72). The District Court reviewed the order *de novo*, then affirmed the order on January 2, 2024 (Dkt. No. 74). Now, six months later, Mr. Bennett again brings a *Franks* challenge to the February 20, 2023 search warrant for his person.

**II.   Factual Background**

After a recitation of his training and experience, Officer Martin's affidavit describes a confidential, reliable informant with a track record of providing "accurate, timely, and reliable" information over a period of three years. (Search Warrant Appl. at 2–9, Dkt. No. 110-1.) The CRI told Officer Martin that a man known as "Dre," who had a telephone with the number 612-450-XXXX was selling heroin and fentanyl, and frequently had a gun. (*Id.*) Officer Martin obtained a tracking warrant for this telephone on November 30, 2022, which was renewed on February 7, 2023. The phone's location data showed it to be at the address of 3XXX Humboldt Avenue South, Minneapolis, a three-story apartment building. A white Ford Explorer with a Minnesota license plate whose number is set forth in full in the affidavit showed up at the Humboldt Avenue apartment building at the same times that "Dre's" telephone did.

6

Officer Martin met a second informant. (*Id.* at 3-9.) Although this informant had provided accurate, corroborated information, this informant had been working with law enforcement less than one month, which is presumably why Officer Martin described this informant as a "CI" rather than a "CRI." The CI told Officer Martin about a person whose first name was "Kevin" and whose last name began with "B" but whose nickname was "Dre." The CI gave Officer Martin three telephone numbers for "Kevin B." Officer Martin already had two of them. One was the number the CRI had given Officer Martin, and one was a number that other police officers had provided to Officer Martin. When Officer Martin obtained subscriber information for the third number, he found it listed to the defendant, Kevin Bennett.

The CI also told Officer Martin that Kevin B. lived at the 3XXX Humboldt Avenue address that the first phone number had been tracked to. (*Id.*) The CI told Officer Martin about being in a third-floor apartment at that address with a view of a Wells Fargo bank out the window.[2] *Id.* Because of the way apartments in the Humboldt Avenue building are laid out, only one apartment on the third floor would have a view of the bank. The CI told Officer Martin that he had seen "Kevin B." in the apartment with money, fentanyl, and a gun. (*Id.*) When Officer Martin checked Mr. Bennett's criminal history he found convictions for narcotics offenses in both Minnesota and Illinois. (*Id.*) When Officer Martin showed an unlabeled photograph of Mr. Bennett to the CRI and the CI, they both identified the person in the photograph as the person they knew as Dre. (*Id.*)

---

[2] The bank is visible on the surveillance video footage, at least the footage taken during daylight hours.

On January 18, 2023 and January 20, 2023, Officer Martin followed the white Ford Explorer (the one that showed up at the Humboldt Avenue address when Mr. Bennett's phone did) as it drove around south Minneapolis, making a series of one-to-two-minute stops during which a person would get in and out of the Explorer. (*Id.* at 4–9.) Officer Martin, based on his training and experience, opined that this behavior was indicative of narcotics dealing. (*Id.*) Between January 31, 2023 and February 9, 2023 Officer Bennett also saw a man matching Mr. Bennett's description coming out of the Humboldt Avenue apartment building several times, several times getting into, and then driving, the Ford Explorer. (*Id.*) On February 10, 2023, police officers followed the Ford Explorer to several locations, again making short stops during which a person would get into the Explorer and then walk away. (*Id.* at 5–9.) The Ford Explorer then went to the Humboldt Avenue address, and the man identified as Mr. Bennett came out and was given a paper bag by a man who got out of the Ford Explorer. (*Id.*)

On February 1, a surveillance pole camera was installed in the alley behind the Humboldt Avenue address. (*Id.*) Officer Martin's affidavit states:

> On 2/3/2023 Your affiant conducted a trash pull at the address on 3[XXX] Humboldt Ave South, Minneapolis, MN after observing Bennett discard a bag into the trash container in the alley. The trash container was under surveillance until officers recovered the bag from the trash container. No one else was seen placing trash in the container or around it. Bennett also appeared to go to Wisconsin-Alu-7XXX parked in the parking lot while he was outside, which is a vehicle Bennett has been seen getting in and on surveillance.

8

The undersigned has reviewed the surveillance video. The video appears to be motion-activated, because when there is no activity in the alley, the video skips ahead to the next time that motion can be detected. For example, during the night of February 2–3, at 10:02 p.m. on February 2 a car drives into the parking lot behind the apartment building and the camera switches on. Once that car stops moving, the video jumps ahead to 10:09. At 10:09, a man wearing a dark track suit with white stripes on the legs and sleeves comes out of the apartment building and jogs to the trash container. The man is carrying a large, black, plastic bag and a small, white, plastic bag. The man lifts the lid on the trash container, puts the black bag into the trash, then goes to a car in the parking lot and gets in, still carrying the white bag. After a minute, the man, now empty-handed, leaves the car and goes back in the direction of the apartment building. The area near the apartment building's door is in deep darkness, but the area near the trash container is reasonably well-lit by streetlights and the reflection off a snowbank of a car's headlights. At 10:12, a red car drives down the alley and the camera comes on. Once the red car is out of the picture, the video then skips ahead to 2:45 a.m. on February 3, when the same man in the track suit gets into the same car he was briefly in at 10:09. When seen in daylight on the surveillance video, and by expanding the picture, the undersigned can see that this car's rear license plate is formatted as a Wisconsin license plate, with red lettering along the top and black letters and numbers underneath.

At 10:14 a.m. on February 3, a white Ford Explorer drives into the parking lot from the alley and reverses into a parking spot across from the car with the apparent Wisconsin license plate. A man gets out of the Ford Explorer and walks in front of it to meet the man

9

who was in the parking lot the night before, still wearing the same track suit with the white stripes. The man in the track suit hands a small, white packet to the other man and the other man gives the man in the track suit something small. The man in the track suit immediately goes back into the apartment building and the other man gets back in the Ford Explorer, which drives away. The entire interchange lasts approximately one minute.

At 10:21, a purple minivan drives into the alley, then into the parking lot, and parks between the car with apparent Wisconsin license plates and the trash container. The sliding door behind the front passenger seat opens, and an occupant of the van leans out, showing their head, upper torso, and one arm. The hand of this occupant is wearing a blue glove, similar in appearance to the thin latex gloves worn for sanitary reasons. The occupant of the van places one hand on the trash container and moves it slightly. The video then skips ahead by 30 seconds, from 10:21:19 to 10:21:49, at which point the purple minivan is seen backing up with its sliding door still open and then driving away down the alley.

## III. Discussion

### A. Legal Standards

An affidavit supporting a search warrant is presumed to be truthful. *Franks v. Delaware*, 438 U.S. 154, 164 (1978). A defendant may seek a *Franks* hearing "to challenge a search warrant on the ground that the supporting affidavit contains factual misrepresentations or omissions relevant to the probable cause determination." *See United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013). Before a court will convene a *Franks* hearing, however, the defendant must make a substantial preliminary showing that (1) the affidavit contained a false statement made either knowingly and intentionally, or with

reckless disregard for the truth; and (2) with the false statement corrected or missing information inserted, the affidavit no longer establishes probable cause for the search. *United States v. Gonzalez*, 781 F.3d 422, 430 (8th Cir. 2015). Recklessness may be inferred from omissions in an affidavit when the material omitted "would have been clearly critical to a finding of probable cause." *United States v. Conant*, 799 F.3d 1195, 1200 (quoting *United States v. McIntyre*, 646 F.3d 1107, 1114 (8th Cir. 2011)).

"The requirement of a substantial preliminary showing is not lightly met." *United States v. Arnold*, 725 F.3d 896, 898 (8th Cir. 2013) (quoting *United States v. Mathison*, 157 F. 3d 541, 548 (8th Cir. 2009). Importantly, mere allegations, without more—such as "a sworn affidavit from a witness or other reliable corroboration"—are not a substantial preliminary showing. *Id.* When there is no proof that the affiant either deliberately told a lie or recklessly disregarded the truth, no *Franks* hearing is needed. *Id.* (quoting *United States v. Moore*, 129 F. 3d 989, 992 (8th Cir. 1997)).

**B.     Analysis**

Mr. Bennett's allegation about Officer Martin's ability to identify Mr. Bennett ignores the context of Officer Martin's statement, while his allegation that there was no trash pull is simply wrong. As the United States points out in its opposition to Mr. Bennett's motions, by the time Officer Martin submitted his search warrant application on February 20, 2023, Officer Martin had become familiar with Mr. Bennett's appearance, both by looking at photographs of Mr. Bennett and through Officer Martin's own personal surveillance of Mr. Bennett. Officer Martin knew what vehicle Mr. Bennett drove and knew where Mr. Martin lived. No matter the quality of the pole camera video, Officer

11

Martin did not make a false statement when he identified the person who put trash out at 10:09 p.m. on February 2, 2023 as Mr. Bennett. Not only was Officer Martin familiar with Mr. Bennett's appearance, but the person was seen coming out of the apartment building in which Mr. Bennett lived. The person was seen on the morning of February 3 interacting with the occupants of the Ford Explorer that Mr. Bennett had been seen in and which was at the apartment building at some of the times that corresponded with the presence of Mr. Bennett's telephone at the apartment building. The Court finds that the statement that Officer Martin was able to identify the person who set out the trash as Mr. Bennett is true.

Officer Martin also writes in his affidavit that he arranged to have a trash pull conducted of the trash bin behind Mr. Bennett's apartment on February 3, 2023, after he had seen Mr. Martin, on the video, place items in the trash. Mr. Bennett claims that the pole camera video does not show this, but Mr. Bennett is wrong. As described minute-by-minute above, a purple minivan comes into the alley and drives into the apartment building's parking lot next to the trash bin. The van's sliding door opens, and a gloved hand starts to move the trash bin. The video then skips thirty seconds, and when it restarts, the van is driving away. The Court finds that this short stretch of video shows a trash pull, because that is the most straightforward and most credible construction of the video. In order to claim that this video does not show a trash pull, one must posit that during the 30 seconds when the video was off, the police (assuming that the person with the blue gloved hand is a police officer) drove into the alley, actually touched the trash bin, but then drove away without removing anything from the trash. This is, to put it mildly, not a convincing,

or even a credible, interpretation of the events on the video. The Court finds that the statement that the police conducted a trash pull on February 3, 2023 is true.

Not only are these statements true, which would be reason enough to deny Mr. Bennett's motion for a *Franks* hearing, but even if the trash pull is removed from Officer Martin's affidavit, that affidavit still establishes probable cause to search Mr. Bennett's person. Over and above the trash pull, the warrant affidavit shows that two informants, one reliable, one untested, told Officer Martin about a "Dre" or "Kevin B." (also known as "Dre") who sold drugs and had a gun. The reliable informant was able to give Officer Martin one phone number for Dre, while the informant gave three numbers, one of which was the same one the reliable informant had provided, another of which Officer Martin had already received from other police officers. One of the telephone numbers was subscribed to by the defendant in this case, Mr. Bennett. The informants both identified a photograph of Mr. Bennett as Dre. A white Ford Explorer was in the parking lot of a three-story apartment building on Humboldt Avenue at the same time a tracker placed on one of Mr. Bennett's telephones by warrant was also at that apartment building. That Ford Explorer was surveilled driving around south Minneapolis making frequent short stops, activity that to Officer Martin bespoke drug dealing. Officer Martin received informant information that in "Dre's" third floor apartment in the Humboldt Avenue building, they had seen narcotics and firearms in the possession of "Dre."

Taken together, this information is more than sufficient to provide probable cause to search Mr. Bennett.

Finally, given that the statements attacked by Mr. Bennett are in fact true, it is impossible for the Court to find that Officer Martin made false statements either deliberately or with reckless disregard for the truth.

For all these reasons, **IT IS HEREBY ORDERED** that Defendant Kevin Deandre Bennett's Motion to Reopen Pretrial Motions (Dkt. No. 103) is **GRANTED**, but that his Motion for a *Franks* Hearing (Dkt. No. 104) is **DENIED**.

Date:  June 28, 2024                                        *s/ John F. Docherty*
                                                            JOHN F. DOCHERTY
                                                            United States Magistrate Judge